UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISON
LEXINGTON

| | |
|---|---|
| IN THE MATTER OF THE SEARCH | * |
| INFORMATION ASSOCIATED WITH | |
| THE CELLULAR DEVICE ASSIGNED | * |
| CALL NUMBER | |
| **(859) 806-6293** | * |
| THAT IS STORED AT PREMESES | |
| CONTROLLED BY AT&T | * |
| | *     *     * |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Melanie Star Dry, a Special Agent with Homeland Security Investigations, being duly sworn, depose and state as follows:

### I.

### INTRODUCTION

1. I this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **(859) 806-6293** ("the **SUBJECT PHONE**) that is stored at premises controlled by **AT&T,** a wireless telephone service provider headquartered at **11760 U.S. Highway 1, Suite 300, North Palm Beach, Florida 33408.** The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(l)(A) to require **AT&T** to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I, Melanie Star Dry, am a Special Agent with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"),

assigned to the office of the Special Agent in Charge ("SAC") in Nashville, Tennessee. I have been a Special Agent since June 2022 and I am assigned to the Resident Agent (RA) office in Lexington, Kentucky. As part of my duties, I am authorized to investigate violations of the laws of the United States, including criminal violations of United States Code chapters 8, 18, 19, and 21. My formal law enforcement training includes successfully completing the Criminal Investigator Training Program, the Homeland Security Investigations Special Agent Training, and the Customs and Border Protection Training at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. I have received both formal and on the job training in the investigation of human and labor trafficking. I am an "Investigative or Law Enforcement Officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516, as well as authorized to execute search and seizure warrants issued under Rule 41 of the Federal Rules of Criminal Procedure.

      3.     Prior to my tenure as a Special Agent, I was employed as a Customs and Border Protection Officer with the Office of Field Operations. I worked as a municipal police officer in the uniformed patrol division in the state of New Jersey prior to beginning my federal law enforcement career. I possess a Bachelor's Degree in Psychology (Magna Cum Laude) as well as several law enforcement certifications to include, but not limited to Basic Investigator, Accident Investigation, Domestic Violence and Sexual Assault Investigations, and Epidemiological Investigations. I have served since 2011 and continue to serve in the Army Reserves. I deployed as a Psychological Operations (PSYOP) Sergeant where I developed and instructed Psychological Operations courses to newly formulated PSYOP cells with our foreign partners. In 2021 I became a rated aviator in the Army flying both rotary wing and fixed wing aircraft.

      4.     As a federal agent, I am authorized, under Title 18, United States Code, Section 3056, to conduct investigations of and execute warrants for offenses of labor trafficking and alien harboring, including those offenses enumerated in Title 18, United States Code, Section 1589 and Title 8, United States Code, Section 1324.

5. The following is based on my own investigation, the oral and written reports by other law enforcement officers, physical surveillance, subpoenaed records, database checks, and other investigative techniques. This affidavit sets forth a full and complete statement of the facts necessary to justify the requested warrant, but it does not detail each and every fact learned during the course of this investigation. All dates, times, and quantities mentioned in this affidavit are best approximations.

## II.

## SUBJECT PHONE IDENTIFICATION

6. Your Affiant reviewed call detail records and data relating to cellular telephone number **(859) 806-6293 (hereinafter SUBJECT PHONE)**. Subscriber information shows **SUBJECT PHONE** is serviced by AT&T. Furthermore, subscriber information shows the phone to be registered in the name Polly Mcmanus (1209 Fontaine Road, Lexington, KY 40502), the subject's mother. The **SUBJECT PHONE** has been active since April 11, 2021 and is still currently active. The **SUBJECT PHONE** is known to belong to and be utilized by Ethan MCMANUS SANNING. This phone was in MCMANUS SANNING's possession on the date of the interview and MCMANUS SANNING stated the cell phone was his.

7. In my training and experience, I have learned that **AT&T** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than

other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

8. Based on my training and experience, I know that **AT&T** can collect cell-site data about **THE SUBJECT PHONE.** I also know that wireless providers such as **AT&T** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

9. Based on my training and experience, I know that wireless providers such as **AT&T** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as **AT&T** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify **THE SUBJECT PHONE**'S user or users and may assist in the identification of co- conspirators and/or victims.

10. Based on the facts set forth below, I have probable cause to believe that the requested information will result in the acquisition of evidence of a crime, contraband, fruits of a crime, or other items illegally possessed; or property designed for use, intended for use, or used in committing a crime, specifically, in violation of 18 U.S.C. § 2252 – which criminalizes the acts of distributing, receiving, transporting, and possessing child pornography.

11. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all my knowledge of, or investigation into, this matter. Unless specifically

4

indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III.

### STATEMENT OF PROBABLE CAUSE

12. Your affiant is conducting an investigation into Ethan MCMANNUS SANNING, a United States Army soldier stationed at Fort Campbell, KY (DOB: 04/06/2003) for alleged receipt and transportation of child pornography.

13. On March 24, 2023, Homeland Security Investigations (HSI) Lexington and the Internet Crimes Against Children (ICAC) Task Force received information from HSI Rio Grande Valley (RGV) Child Exploitation Investigations Task Force (CEITF) regarding a target residing in Lexington, Kentucky who had PayPal transactions with an account that was confirmed to be selling Child Sexual Abuse Material (CSAM). The target, Ethan Orien MCMANUS SANNING (20 y/o w/m), resides in Lexington and is currently enlisted in the United States Army stationed at Fort Campbell, Kentucky. MCMANUS SANNING was identified as the owner of a PayPal account identified as sending payments to a confirmed CSAM seller account on December 11, 2022.

    a. Date/Time: December 11, 2022/10:57pm

       Seller Name: Asanda Ngongoma

       Seller Email: Asahgaselarr@gmail.com

       Transaction ID: 1FG86142MU2085628

       Transaction Amount: $55.00

       Credit Card: Ending 5387 (Navy Federal debit card connected to PayPal account)

       IP Address: 12.153.8.131

14. The seller account has been confirmed by HSI RGV CEITF as solely existing to sell CSAM. This was achieved via conversations on Telegram between an undercover agent (UCA) and the seller account as well as purchases of CSAM from the seller account. The $55.00 payment was the amount quoted for "50 videos of other races" during one of the conversations on Telegram between

5

the UCA the seller account. During that same conversation the seller account told the UCA the age range of children in the videos was 6-12.

15. On April 23, 2023, MCMANNUS SANNING was interviewed at the Department of the Army Criminal Investigations Division (DACID) regarding allegedly utilizing his PayPal account to purchase Child Sexual Abuse Material (CSAM). During the interview MCMANNUS SANNING stated that he solely had access to his PayPal account and several cards were connected to the account. MCMANUS SANNING confirmed the email address: eosanning@gmail.com and phone number: 859-806-6293 **(THE SUBJECT PHONE)** were both his and associated with the PayPal account. MCMANUS SANNING stated he primarily uses the debit card connected to his Navy Federal bank account when making PayPal transactions. [Agent Note: Navy Federal Debit Card ending 5287 was utilized for the transaction in question and is the only Navy Federal card connected to his PayPal account]. MCMANUS SANNING also stated that although it was unrelated to the PayPal account, he noticed someone had used his Navy Federal debit card for Uber Eats, but he did not observe any other unauthorized transactions.

16. MCMANNUS SANNING stated he primarily used his PayPal account to make gaming purchases and eventually stated he used his account to purchase a considerable amount of pornography on Snapchat consisting of both photographs and videos. MCMANUS SANNING stated he normally made purchases for pornography for amounts around $10. MCMANUS SANNING advised he purchased pornography from Telegram as well. When asked if he used Telegram for anything else other than pornography MCMANUS SANNING said he did not.

17. When presented with his PayPal transaction on December 11, 2022 with Asanda Ngongoma for $55.00 MCMANUS SANNING acknowledged the transaction. When advised the account he sent money to was confirmed to exist for the sole purpose of selling child pornography, MCMANUS SANNING stated "I imagine it was probably children. "I'm pretty sure I deleted that soon after I bought that one". When asked about approximate ages of children in the videos MCMANUS SANNING stated they were young teens approximately 13 years old.

18. MCMANUS SANNING stated he belonged to several groups on Telegram dedicated to pornography. In one of these groups a user posted a "sample picture" of what they were selling. MCMANUS SANNING stated he observed that the person in the picture was underage, but did not remember what the picture was. MCMANUS SANNING then contacted this user privately to obtain their PayPal information. MCMANUS SANNING stated he sent $55.00 and received approximately 20 videos. MCMANUS SANNING stated many of them had an adult in the video with a child and stated "some were having sex or other acts of sex". MCMANUS-SANNING stated he did not remember the username or profile picture of the seller.

19. MCMANUS SANNING was asked for consent to search **THE SUBJECT PHONE.** MCMANNUS SANNING provided consent both verbally and in writing by signing a consent form and provided his phone password.

20. A manual review of MCMANUS SANNING's iPhone was conducted and the applications Discord, Mega, Snapchat, Telegram, and Tor Browser were observed on **THE SUBJECT PHONE**. These applications allow users to communicate with other users and it is commonly known to law enforcement these applications can and are utilized by some to exchange, view, buy and sell CSAM material.

21. Upon opening MCMANUS SANNING's Telegram account, approximately 25 groups were observed as well as private conversations, all of which were dedicated to pornography. One particular chat labeled "Primary" displayed a profile picture of a child approximately 5-6 years old with what appeared to be an adult's erect penis in its mouth. The bio information for the profile said something to the effect of "only contact me if you want to buy CP, don't bother if you don't trust me". [Agent Note: this was the same photograph and verbiage documented for the account from which HSI RGV CEITF purchased CSAM].

22. The conversation observed between MCMANUS SANNING and "Primary" showed MCMANUS SANNING had initiated the conversation with the seller approximately three days prior and asked for their "menu". The seller responded with prices ranging from $50-$70 and they were

7

sold by black or other races.  The seller also sent a picture of approximately 30 thumbnails of videos depicting children of various age groups, pre-pubescent to young teen, engaged in various types of sexual activity.

23. MCMANNUS SANNING was made aware of the conversation that was observed in Telegram between him and "Primary".  MCMANUS SANNING was asked when the seller posted the pictures to the group if he knew the person in the picture was under the age of 18.  MCMANUS SANNING responded "yes".  MCMANNUS SANNING was then asked when he sent the seller $55.00 through PayPal if he knew he was purchasing videos of children under the age of 18, to which MCMANUS SANNING responded that he did know.  MCMANUS SANNING stated he received a link through the private chat after sending payment that led him to another private Telegram chat containing the CSAM.  MCMANUS SANNING stated he looked at them and deleted them.

24. A verbal orders of the commander (VOCO) authorization was given by the on-call Magistrate to seize MCMANNUS SANNING's laptop from his barracks room and a search warrant was signed to search both the laptop and **THE SUBJECT PHONE.**

25. On September 19, 2023, the DACID Digital Evidence Examiner (DFE) reported there were over 550 pictures and over 75 videos of suspected CSAM located on **THE SUBJECT PHONE.** Additionally, over 700 pictures and over 250 videos of age difficult/possible CSAM were located.

26. On Monday, October 2, 2023, a review was conducted of the pictures and videos extracted by the DFE from **THE SUBJECT PHONE** to obtain a representative sample**.** Many of the pictures and videos extracted from the device depict children, both male and female, under the age of 12.

27. One video depicts a female approximately 13-15 years old performing various sexual acts with a male who appears to be approximately 4-6 years old.  There are several videos of the same children in the same room.  One video has writing imposed across it stating "this horny bitch sucks and fucks here [her] little brother".  The sexual acts range from the female performing oral sex on the

8

male, the male performing oral sex on the female, and the male child vaginally penetrating the female child with his penis.

28. Another series of videos depicts 4 children, 3 females and 1 male, under the age of 8. The children are laying on a white sheet on the floor and are performing oral sex on each other. During one video which is approximately 33 minutes long, the male child appears to press himself against one of the females in a way indicative of penile penetration.

29. The exchangeable image file format (EXIF) data from the images and videos extracted from **THE SUBJECT PHONE** show a majority of the "creation" dates between January 8, 2023 and April 25, 2023. These "creation" dates are the dates the images or videos were downloaded to **THE SUBJECT PHONE.**

30. MCMANUS SANNING's home address of record is in Lexington, Kentucky, which is located in the Eastern District of Kentucky. Since joining the Army, MCMANUS SANNING has been stationed at Fort Campbell, Kentucky, which is located in both the Western District of Kentucky and Middle District of Tennessee. MCMANUS SANNING continues to travel between Fort Campbell and Lexington, Kentucky. Obtaining historical cellular site data from the aforementioned dates will assist law enforcement in discovering the dates on which he was in possession of CSAM in the Eastern District of Kentucky and the location in which he was during the receipt of CSAM.

### IV.

### AUTHORIZATION REQUEST

31. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

32. I further request that the Court direct **AT&T** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on **AT&T,** who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

/s/ Melanie S. Dry
Melanie S. Dry
Special Agent
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this __28__ the day of November 2023.

_____
HONORABLE MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE